## HOOKS *et al.* v. KENNARD *et al.*

No. 368.  Opinion Filed March 21, 1911.

(114 Pac. 744.)

**INDIANS—Lands—Descent and Distribution.** The three allottees whose estates are involved herein were enrolled by the Commission to the Five Civilized Tribes under section 28 of the original agreement made with the Creeks, and ratified by act of Congress approved March 1, 1901 (chapter 676, 31 Stat. 861), and the same allotted in their respective names by the commission prior to the supplemental agreement made with the Creeks and ratified in 1902 by Act of Congress approved June 30, 1902 (chapter 1322, 32 Stat. 500). One died November 1, 1900, one died June 1, 1901, and one died December 25, 1901. Held, the Creek law of descent and distribution determines the heirs and their shares and portions as directed by the second paragraph of section 28 of the said original agreement. which declares that "all citizens who were living on the first day of April, 1899, entitled to be enrolled under section 21 of the Act of Congress approved June 28, 1898, entitled, 'An act for the protection of the people of the Indian Territory and for other purposes' (Act June 28, 1898, c. 517, 30 Stat. 502), shall be placed upon the rolls to be. made by said commission under said act of Congress, and if any such citizen has died since that

time, or may hereafter die, before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

(Syllabus by the Court.)

*Error from District Court, Wagoner County; John H. King, Judge.*

Action by Alice Payne Hooks and others against Mary Jane Kennard and others. From the judgment, plaintiffs bring error. Modified and affirmed, and remanded, with directions.

*Robt. F. Blair, W. O. Rittenhouse,* and *W. T. Drake,* for plaintiffs in error.

*Hutchings, Murphey & German,* for defendants in error.

*Thos. H. Owen, J. C. Stone, Geo. S. Ramsey.* and *C. L. Thomas, amici curiae.*

KANE, J.  This was a suit in ejectment commenced by Alice Payne Hooks, one of the plaintiffs in error, against the defendants in error in the United States Court for the Western District of the Indian Territory, at Wagoner, on the 26th day of August, 1905. The petition alleged, in substance: That the plaintiffs are the nearest of kin to three deceased Creek allottees, to wit, Lucy Frank, William Kennard, and George Kennard. That Lucy Frank died on the 1st day of November, 1900. That William Kennard died on June 1, 1901. That Lucy Frank was the daughter of George Kennard, and was a full-blood Creek Indian. That William Kennard was the son of George Kennard and the defendant Mary Jane Kennard, and was a half-blood Indian. That George Kennard was a full-blood Creek Indian. That during the year 1904 the Creek Nation, by and through its Principal Chief, executed a deed or patent, conveying to the heirs at law of Lucy Frank the land described as her allotment in the complaint, and like deeds or patents were issued to their heirs at law of Wm. Kennard and George Kennard. All of these deeds or patents were

approved by the Secretary of the Interior, and cover lands aggregating 480 acres.

Upon the issues being joined, the cause was tried to the court, and its findings of fact and conclusions of law were in substance as follows: (1) Lucy Frank, a citizen by blood of the Creek Nation, enrolled as a full blood, and she died on the first day of November, 1900, intestate and without issue, leaving as her next of kin and heirs at law George Kennard, her father, William Kennard, her half-brother, Jimsey Chalakie, the son of Tom Chalakie, deceased, who was the uncle of said George Kennard, Jennette Asbury, and Nacy Tiger, the children of Amy Chalakie, deceased, who was the daughter of Tom Chalakie, deceased, the uncle of the said George Kennard, William Childers, son of Jennie Childers, deceased, who was the daughter of Sunniah Childers, deceased, and aunt of the said George Kennard, Lydia Jones, and Suckey Haynes, the daughters of said Sunniah Childers, deceased, Rachel Childers and Emma Childers, the children of Emma Childers, who was also a son of said Sunniah Childers, deceased, Mary Tiger, the daughter of Washington Childers, deseased, a son of said Sunniah Childers, deceased, Alice Payne Hooks, the daughter of Estatx Payne, deceased, the first cousin of the said George Kennard, Eli Harrison, the son of Louisiana Harrison, deceased, who was the daughter of Judge Milford, deceased, and aunt of said George Kennard, Sarah Thomas, Sopha Thomas, and Wesley Tiger, the children of Katie Tiger, deceased, who was the daughter of the said Judge Milford, deceased, also Ben Burgess, Mary Jane Burgess, ——— Sunday, and ——— Sunday, the children of Lizzie Burgess-Sunday, deceased, who was the daughter of the said Judge Milford, deceased, all being Creek citizens by blood. (2) That a deed describing lots 9 and 13 of section 1, township 17 N., range 16 E., and lot 7 of section 7, and lots 1 and 3 of section 17, township 17 N., range 17 E., Creek Nation, being 119.10 acres, was executed and delivered to the heirs of Lucy Frank, deceased, on November 18, 1904, by the Principal Chief of the Creek Nation and approved by the Secre-

tary of the Interior. (3) That on November 18, 1904, a deed describing the S. E. 1/4 of the N. E. 1/4 of section 36, township 18 N., range 16 E., Creek Nation, being the homestead, was executed and delivered to the heirs of Lucy Frank, deceased, by the Principal Chief of the Creek Nation, and approved by the Secretary of the Interior. (4) William Kennard was a Creek Indian, duly enrolled as a half-blood, and died intestate and without issue on the 1st day of June, 1901, leaving as his next of kin and heirs at law George Kennard, his father, Mary Jane Kennard, his mother, and the persons mentioned in the first finding of fact, who were his cousins. (5) That on November 18, 1904, a deed describing the S. W. 1/4 of the N. W. 1/4 of section 5, township 17 N., range 17 E., and the E. 1/2 of the S. E. 1/4 of section 31, township 18 N., range 17 E., Creek Nation, and being 120 acres, was executed and delivered to the heirs of William Kennard, deceased, by the Principal Chief of the Creek Nation, and approved by the Secretary of the Interior. (6) That a homestead deed was executed and delivered to the heirs of William Kennard, deceased, by the Principal Chief of the Creek Nation, and approved by the Secretary of the Interior on November 18, 1904, and describing the S. E. 1/4 of the N. E. 1/4 of section 6, township 17 N., range 17 E., Creek Nation. (7) That George Kennard was a duly enrolled Creek citizen by blood, and was lawfully married to the defendant Mary Jane Kennard, and that they were living together as husband and wife at the date of his death. (8) That George Kennard died on December 25, 1901, testate and without children, leaving surviving him his widow, Mary Jane Kennard, and the plaintiffs herein, his cousins. (9) That Mary Jane Kennard is a white woman, and not a citizen of the Creek Nation or Tribe. (10) That on November 18, 1904, a deed describing lot 1 of section 6, the N. E. 1/4 of the N. E. 1/4 and lots 1 and 6 of section 7, township 17 N., range 17 E., and the southwest 10 acres of lot 2, section 9, township 18 N., range 17 E., situate in the Creek Nation, and being 119.22 acres, was executed and delivered to the heirs of George Kennard, deceased, by the Principal Chief

of the Creek Nation, and approved by the Secretary of the Interior. (11) That on November 18, 1904, a deed describing lot 4 of section 5, township 17 N., range 17 E., being the homestead, was executed and delivered to the heirs of George Kennard, deceased, by the Principal Chief of the Creek Nation, and approved by the Secretary of the Interior. (12) That by the terms of the will of George Kennard he bequeathed to his wife, Mary Jane Kennard, all of his property, lands, moneys, rights, credits, and choses in action, including his right to land in the public domain of the Creek Nation, and all moneys, rights or interest due or to become due by the Creek Tribe of Indians, the United States, or others by reason of his Creek citizenship. Also all lands, moneys, rights, or annuities due or to become due him as heir at law of any of his deceased children or grandchildren. (13) That said last will was duly probated in the United States Court for the then Northern District of the Indian Territory, at Wagoner, on January 29, 1902. (14) That Mary Jane Kennard, either by herself or through the agency of one or all of the defendants herein, has been in possession of all the land above described since the 1st day of January, 1901, and is still in possession of the same in the same way. (15) That the land allotted to the heirs of Lucy Frank for the most part is covered with heavy timber and thick underbrush. That it is wet land and overflows in times of high water. That at the present time only about four or five acres are in cultivation. (16) That the homestead of William Kennard, together with the homestead of George Kennard, is under fence in one body, is all in cultivation, part of it overflowing in times of high water. That the rental value of the homestead is perhaps $50 per year. That the uncultivated land of William Kennard's allotment is mostly wet land, and overflows in times of high water, and has little rental value. (17) That of the George Kennard allotment about 50 acres are in cultivation. That all the buildings and improvements are on the homestead 40 acres. That the cultivated land on said allotment is worth $1.50 an acre per year. That the balance of the George

Kennard allotment is mostly in timber and underbrush and is overflow land, and has practically no rental value. (18) That there has been paid into court as rent from the homestead of George and William Kennard the sum of $200, which sum seems to have been about equally received from the two homesteads. (19) That R. F. Shove and A. B. Harsted are the tenants of Mary Jane Kennard, and own no interest or claim in the lands in question. From the evidence it is not clear what interest defendant Thigpen has in the property. (20) That the principal improvements on these allotments are on the homesteads of George Kennard and William Kennard, and that same were placed thereon by Mary Jane Kennard since her husband's death.

From the foregoing facts the court found the following conclusions of law: (1) The lands allotted to the heirs of Lucy Frank were inherited by George Kennard, her father and nearest relation. (2) The lands allotted to William Kennard were inherited by Mary Jane Kennard, his mother, and nearest of kin. (3) Under the terms of George Kennard's will Mary Jane Kennard is entitled to the S. E. ¼ of the N. E. ¼ of section 36, township 18 N., range 16 E., of the Indian base and meridian, the homestead of Lucy Frank, and lot 4 of section 5, township 17 N., range 17 E., the homestead of George Kennard, all of the above land now situate in Wagoner county, Okla. (4) Mary Jane Kennard, as George Kennard's widow, is entitled to an undivided one-half interest in and to lots 9 and 13 of section 1, township 17 N., range 16 E., lot 7 of section 7, and lots 1 and 3 of section 17, township 17 N., range 17 E., of the Indian base and meridian, the allotment of Lucy Frank, and also lot 1 of section 6, the N. E. ¼ of the N. E. ¼ and lots 1 and 6 of section 7, township 17 N., range 17 E., and the southwest 10 acres of lot 2 of section 9, township 18 N., range 17 E., of the Indian base and meridian, the allotment of George Kennard, all of said lands situate in Wagoner county, Okla., and that the other undivided one-half interest in and to said lands was inherited by the heirs at law of George Kennard, viz., Alice Payne Hooks, Jimsey

Chalakie, Jennette Asbury, Nancy Tiger, William Childers, Lydia Jones, Suckey Haynes, Rachel Childers, Emma Childers, Mary Tiger, Eli Harrison, Sarah Thomas, Sopha Thomas, Wesley Tiger, Ben Burgess, Mary Jane Burgess, and ——— Sunday, and ——— Sunday.

Upon these findings of fact and conclusions of law, judgment was duly entered, to reverse which this proceeding in error was commenced.

In order to more fully present the law questions raised, it was stipulated between counsel in this court that the lands in controversy were set apart and allotted in the names of the deceased Creek citizens prior to the approval and ratification of the supplemental agreement made with the Creek Nation and ratified by the tribe July 25, 1902, and proclaimed by the President and became a law on August 8, 1902, and that the names of said deceased citizens were enrolled by the Commissioner of the Five Civilized Tribes as Creek Indians and the rolls thereof duly approved by the Secretary of the Interior prior to the supplemental agreement with the Creeks; that the record in this case may be considered as showing the above facts, and that the opinion of the court may recite that said lands were thus allotted and certificates of allotment issued prior to the supplemental agreement with the Creeks. With the facts thus supplemented, the judgment of the court below upon the question of devolution of the lands involved is correct.

This court has held in several cases that the selection of and the filing upon an allotment of land was the inception and beginning of the title of the allottee or his heirs, and that, when the patent which is only the evidence of title is issued, it relates back to the inception of the title. *De Graffenreid v. Iowa Land & T. Co.,* 20 Okla. 687, 95 Pac. 624; *Godfrey v. Iowa Land & T. Co.,* 21 Okla. 293, 95 Pac. 792; *Irving et al. v. Diamond,* 23 Okla. 325, 100 Pac. 557. If we apply that principle to the case at bar, the title to the allotments of the three Creek allottees whose estates are involved herein passed to and became vested in

their heirs at the date said allotments were segregated and allotted in their names, and, as at that time the original agreement was in force, the Creek law of descent and distribution must be looked to to determine the heirs and the shares and portions of the allotments they are entitled to as directed by the second paragraph of section 28 of said agreement, which provides that "all citizens who were living on the first day of April, 1899, entitled to be enrolled under section 21 of the act of Congress approved June 28, 1898, entitled 'An act for the protection of the people of the Indian Territory and for other purposes' [Act June 28, 1898, c. 517, 30 Stat. 502], shall be placed upon the rolls to be made by said commission under said act of Congress, and if any such citizen has died since that time, or may hereafter die, before receiving his allotment of lands and distributive share of the funds of the tribe, the lands and money to which he would be entitled, if living, shall descend to his heirs according to the laws of descent and distribution of the Creek Nation, and be allotted and distributed to them accordingly."

The trial court held that by the will George Kennard's two homesteads were devised to Mary Kennard: First, the homestead of the testator George Kennard; and, second, the homestead of his daughter, Lucy Frank, which he had inherited. This, we think, was error. Under the terms of the original agreement, and also the supplemental agreement, all lands allotted to citizens shall not in any manner be alienated by the allottee or his heirs before the expiration of five years from the ratification of said agreement. In *Barnes v. Stonebraker, ante,* p. 75, 100 Pac. 579, it was held by this court that the alienation of the homestead of a deceased citizen by blood of the Creek Nation by her heir before the expiration of five years from the ratification of the original agreement is void. Applying this doctrine to the facts herein, the plaintiffs in error are entitled to one-half of the Lucy Frank allotment and also one-half of the surplus allotment of George Kennard. With this modification, the judgment of the court below is affirmed.

The cause is therefore remanded, with directions to enter judgment in conformity with this opinion.

All the Justices concur.